property to be taken upon legal process, with intent to give a preference to the execution creditors, and thereby committed the act of bankruptcy charged against him in the petition, and the adjudicated cases leave no room for doubt upon this question. In re Black [Case No. 1,457]; In re Craft [Id. 3,316]; In re Dibblee [Id. 3,884]; In re Wells [Id. 17,-388]; Campbell v. Traders' Nat. Bank [Id. 2,-370]; Beattie v. Gardner [Id. 1,195]; Rison v. Knapp [Id. 11,861].

The debtor, as before stated, was confessedly insolvent when sued and when his property was taken on the execution, and he took no steps to prevent a judgment, or his property from being thus taken; he therefore suffered an act to be done which he might have prevented, which necessarily resulted in a preference in favor of the judgment creditors, and the law presumes that he intended the natural consequences of his acts. The result of his inactivity being necessarily to give a preference to the creditors suing, he is in law chargeable with having intended to effect that purpose.

I think the act of bankruptcy first charged in the petition clearly proven, and I therefore adjudge the debtor to be a bankrupt, and subject to the provisions of the bankrupt act. It is unnecessary at this time to consider the other questions presented by the counsel.

Consult, also, In re Haughton [Id. 6,223]; Wright v. Filley [Id. 18,077]; Kohlsaat v. Hoguet [Id. 7,919].

---

## Case No. 6,338.

### In re HELLER et al.

[32 Leg. Int. 136.] [1]

District Court, S. D. New York.    March 30, 1875.

BANKRUPTCY—VERIFICATION OF INVOLUNTARY PETITION.

An involuntary petition in bankruptcy cannot be verified before a notary public.

An involuntary petition in bankruptcy was filed by several creditors of the firm of Heller Bros. & Co., for an adjudication of said firm as bankrupts. This was opposed by the counsel for the debtors upon the ground that the original petition was not properly verified—verification having been made before a notary public, and not before a judge, register, or commissioner, as provided by section 5017, c. 2, tit. 61, of the Revised Statutes.

BLATCHFORD, District Judge, rendered a decision dismissing the petition and all the proceedings, and denying the motion for an adjudication, upon the ground that the petition was not properly verified before a notary public.

[1] [Reprinted by permission.]

---

## Case No. 6,339.

### In re HELLER.

[5 N. B. R. 46; [1] 41 How. Pr. 213.]

District Court, S. D. New York.  June, 1871.

BANKRUPTCY—AMENDMENT TO SCHEDULE.

1. A register has the right to allow amendments to the schedules on the ex parte application of the bankrupt, at any time while the cause is pending before him, but it is the better practice, if there shall have been an appearance on the part of creditors, to issue an order to show cause, &c., and to require due notice of such application to be given.

[Cited in Re Blaisdell, Case No. 1,488; Re Dole, Id. 3,965.]

2. It is the duty of the bankrupt to amend his schedules so as to make them conform to the facts, and that the filing of specifications does not deprive him of that right or release him from that duty.

3. The register should allow all necessary and proper amendments whenever a proper cause therefor is shown.

By JOHN FITCH, Register:

Upon affidavits and upon all the pleadings and proceedings in this cause, the bankrupt moves to amend Schedule A attached to his petition for adjudication in bankruptcy, by striking out certain debts which were inserted in a previous amendment through a mistake of the law, the debts having been contracted by the bankrupt since the filing of his petition. Since the adoption of the code of procedure by the legislature of this state, amendments to any pleadings or proceedings are allowed virtually as a matter of course, and are within the discretion of the court, and being allowed whenever proper cause is shown. Sections 172–174, Code. The practice of the state courts under section 173 of the Code, which section of the Code is as follows: "The court may, before or after judgment, in furtherance of justice and in such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a party or a mistake in other respect; or by inserting other allegations material to the case; or when the amendment does not change substantially the claim or defence, by conforming the pleading or proceeding to the facts proved,"—has been settled by the following decisions: Amendment before trial, matter of course. Troy & B. R. Co. v. Tibbits, 11 How. Pr. 170; Daguerre v. Orser, 3 Abb. Pr. 86. Reasonable excuse for defect sufficient. Harrington v. Slade, 22 Barb. 164. See, further, Merchant v. New York Life Ins. Co., 2 Sandf. 669, 2 Code R. 66, 87; Chapman v. Webb, 1 Code R. (N. S.) 388. Summons may be amended after judgment. Sluyter v. Smith, 2 Bosw. 673. See, also [Davidson v. Powell], 13 How. Pr. 287. Affidavits may be amended [Furman v. Walter] Id. 350. A

[1] [Reprinted from 5 N. B. R. 46, by permission.]

warrant of attachment may be amended. Kissam v. Marshall, 10 Abb. Pr. 424. Where amendment is in furtherance of justice, but little restriction upon power of amendment. Van Ness v. Bush, 14 Abb. Pr. 36; Beardsley v. Stover, 7 How. Pr. 294; 3 Abb. Pr. 86. Court will allow amendment of complaint necessary to conform it to the facts proved. Hunter v. Hudson River Iron & Mach. Co., 20 Barb. 493. By section 174 of the Code of Procedure, whenever any proceeding taken by a party fails to conform in any respect to the provisions of this Code, the court may, on motion, permit an amendment so as to make it conformable thereto.

The motion to amend is properly made. General order 5; In re Morford [Case No. 9,796]; In re Perry [Id. 10,998]; In re Little [Id. 8,390]; In re Watts [Id. 17,293]. The bankrupt is required by the bankrupt act of March 2, 1867 [14 Stat. 517], to make his petition and schedule conform to the provisions of the law. In re Orne [Case No. 10,582]. And the court has authority to allow amendments to be made at any time prior to the discharge of the bankrupt. General order 5. "He shall be at liberty from time to time, upon oath, to amend and correct his schedules of creditors and property, so that the same shall conform to the facts." U. S. Bankrupt Act, § 26; In re Jones [Case No. 7,447]; In re Orne [supra]. In the last cited case Blatchford, J., says: "An error, whenever discovered, must be corrected, no matter what proceedings have theretofore taken place." "The register may order schedule to be amended at any stage of the proceedings." In re Perry [supra]. Additional amendments were allowed after the assignee had made and filed his report. I entertain no doubt of the right of the bankrupt to amend under section 26, nor of the application being properly made to the register.

A bankrupt may amend schedules even after the hearing of specifications against the discharge. In re Preston [Case No. 11,392]. In this cause leave to amend was granted by the register under section 26 of the act, and general orders 5, 7, and 33. Schedule A was amended by the addition of about twenty-five creditors, among these were included the names of eight persons, the indebtedness to whom was subsequent to filing of the petition. As the discharge, if granted, could not release the petitioner from debts contracted after the filing of his petition, those creditors whose names were improperly inserted could suffer no loss or damage by the mistake. They had not proved or attempted to prove their debts, and the proceedings have not been affected in any way by their names being inserted in the amended schedule. The bankrupt, on becoming aware of the error, seeks to correct it by striking out those names from his amended schedule, and asks leave to amend by filing an amended schedule omitting the names of those eight creditors whose names were by mistake placed in the amended schedule. The mistake of placing the names of creditors whose claims did not exist previous to the filing of the petition, on the amended schedule, not having prejudiced a right of any previously existing creditor, and being, in effect, the asking of a relief which the court has no power to grant, is merely surplusage and the last proposed amendment, which is for the purpose of removing manifest imperfections, is an act of good faith, and the court should not merely permit the amendment, but require it to be made.

The bankrupt, on making his motion for leave to amend, states, "under oath, the substance of the matter proposed to be included in the amendments" &c., as required by general order No. 33. It is not reasonable to suppose this rule was intended to restrict amendments to cases of omission. Section 26 of the act, and general orders 5 and 7, are not susceptible of any such construction. The register has power to allow amendments, and no creditor has a right to oppose such application. In re Watts [supra]. In Re Ratcliffe [Case No. 11,578], an amendment was allowed on condition that there should be a new warrant issued, &c., which was necessary under the circumstances of that case. So, also, in Re Perry [supra], additional proceedings were considered necessary. In re Morford [supra], Blatchford, J., I consider as settling the practice as applicable to this case. The register, holding chambers of the district court, either upon his own motion or upon application of the bankrupt or a creditor, or any other person having a standing in court, can make an order allowing such amendments as may be proper. The proceeding is ex parte, and is entirely within the discretion of the register to grant or refuse it; if applied for by the petitioner, no notice thereof is required to be given to any one, neither has a creditor a right to oppose it. Should the register refuse to allow the amendments, the petitioner has a right to appeal to the special term. Whenever any bankrupt or creditor shall make a motion before the register, at chambers, to amend the schedules or to compel the petitioner to amend his schedules, I hold the better practice to be to issue an order requiring the party to show cause why the amendments as asked for should not be allowed, specifying particularly the points in which the schedules are defective. The bankrupt or creditors will then have a right to oppose the application, and appeal from the order at chambers to the special term if dissatisfied with the decision of the register. The authorities on these points are: In re Hill [Case No. 6,481]; In re Orne [Id. 10,582]; In re Jones [Id. 7,447]; In re Levy [Id. 8,296]; In re Patterson [Id. 10,814]; In re Morford [Id. 9,796]; In re Watts [Id. 17,293].

The foregoing decisions are the same, in spirit, as to the allowance of amendments as

are the decisions of the courts of this state, the same liberal spirit prevailing in each; allowing amendments as a matter of course in the discretion of the court, appeals being allowed in all proper cases. In this state the courts have, for a long series of years, allowed the most liberal amendments in all pleadings and proceedings, allowing all necessary amendments in pleadings, before, on and after the trial of causes; no one has opposed, and the bar of the state generally approve of the practice. The act of congress requiring the national courts to follow the practice of the state courts in certain particulars, in the districts in which the United States courts are being held, enables the two courts to assimilate their practice, and enables the United States courts to avoid much of the English common law practice descended to us from the Roman law. In bankruptcy proceedings, it is in furtherance of the ends of justice and as contemplated by the bankrupt act, that the register holding the chambers of the district court, and acting as an United States district judge, clothed with his powers in regard to the case before him, should make all necessary orders in the case. As the registers selected by Chief Justice Chase and approved by the district courts are with few and unimportant exceptions men of the highest order of legal talent, learned in the law, having a full practice in the state courts, standing high in their respective communities—many of them having had legislative and congressional as well as judicial experience—to such men all the workings of the bankrupt law can safely be trusted; they are, as it were, a class of judicial pupils composing a school for judges, constantly increasing their fund of judicial knowledge, acquiring that practice and experience most fitting and qualifying them for judges of our state courts, and promotions to district or circuit judges of United States courts.

The opposing creditors, by their counsel, submit the following objections to the granting of the bankrupt's motion: First. "There is no justification in law for the exercise of such power or discretion by the register at this stage of the proceedings." Second. "The functions of the register have been performed with the exception of filing the specifications." General orders 6, 7, 12, 24, and 29. Third. "The case was de jure remanded to the court after the filing of the specifications." Fourth. "The register has no jurisdiction in the premises. He is limited to granting amendments for omissions in the schedules, and leave to amend in uncontested cases." General orders 5, 7, and 33. Fifth. "It is for the court, and the court alone to decide upon motion for leave to amend in contested cases; the filing of specifications is decisive of the question whether a case is contested or not. The motion should have been addressed to the court." Sixth. "The register has already certified that said petition and schedule are correct in form. as it was his bounden duty to do so according to rules four and seven." Seventh. "It is claimed by the opposing creditors in the specifications, that the matter sought to be amended or withdrawn is evidence of both fraud and perjury under the law."

Upon a careful examination of the views presented by the counsel for the bankrupt, and also of the opposing creditors and the authorities cited, I do not find any which support either of the objections of the opposing creditor. The objection taken that the mere filing of the specifications deprives the bankrupt of his right to the amendments, is not, in my opinion, sustained by the bankrupt law, or by the rules or practice of this court, as the bankrupt act, by section 26 of the act, provides, "That the bankrupt shall be at liberty, from time to time, to amend and correct his schedules of creditors and property so that the same shall conform to the facts;" and for the purpose of such amendments the register is the court, and has the power to grant them, on motion, ex parte, and that any politeness or courtesy shown to counsel for creditors out of personal respect by the register, who was willing that they should be heard in order that their views might be presented to the court, does not bring the cause within the rule of that portion of the bankrupt act defining contested cases. and that this application is ex parte, and not in any respect a contested case. "The mere filing of the specifications does not, ipso facto, adjourn the cause into court, or oust the register of his jurisdiction of the cause. The filing of the specifications is a mere incident to the opposition to the bankrupt's discharge, by a statement of the reasons why a bankrupt should not be discharged. He, (the register) proceeds with the cause notwithstanding the specifications, until his duties are performed. In Re Puffer [Case No. 11,459], Hall, J., decides that if the creditor desires an examination of the bankrupt with a view of using such examination in opposing the discharge, or for any other purpose, he can proceed under district court rule twenty-six (Northern district of New York), such proceedings retain the cause before the register until the testimony shall have been taken; any creditor having a standing in court has a right to have such examination of the bankrupt or any other persons as witnesses. In re Adams, 36 How. Pr. 51. Creditors who have proven, or attempted to prove their claims, although not as yet allowed by the register, are entitled to have an order for such an examination. In re Metcalf [Case No. 9,494]; 36 How. Pr. 51; Bump, Bankr. 64; Bankrupt Act, § 19; General order 3."

1st. Upon all the proceedings in this cause, including the specifications, I decide as a matter of law that this application of the bankrupt, in form of a motion to amend his schedules, is one that he has a right to make

ex parte, and that neither the assignee nor opposing creditors have a right to be heard upon the motion or to oppose the same, but that it is better practice, in order to bring the question fully before the district court, to allow them to do so, and to require due notice of such application to be given.

2d. That the bankrupt has a right to amend his schedules by striking out the names of the eight persons who have become creditors of the bankrupt since the filing of the petition and schedules.

3d. That in this case it was the duty of the bankrupt to amend his schedules, so as to make them conform to the facts, and that he could make such application at any stage of the proceedings before the register had returned the cause to the court, and that the filing of the specifications did not prejudice him in, or deprive him of this right.

4th. That the register has the right to grant an order allowing such amendments whenever a proper cause therefor is shown. This being a proper cause, and the causes shown are in my opinion sufficient, the motion of the bankrupt is granted.

5th. The opposing creditors, by Henry Morris, their attorney, object to the granting of the order, and request a certificate to the district court.

Benjamin Todd, for bankrupt.
Henry Morris, for opposing creditors.

BLATCHFORD, District Judge. I concur in the views of the register stated in his conclusions 1, 2, 3, and 4.

====

## Case No. 6,340.

### HELLMAN et al. v. HOLLADAY.

[1 Woolw. 365.] [1]

Circuit Court, D. Nebraska. Nov. Term, 1868.

COMMON CARRIER OF PASSENGERS, BAGGAGE, AND GOLD.

1. The case of Orange County Bank v. Brown, 9 Wend. 116, distinguished.

2. If a passenger surreptitiously introduce into a coach an article of great value, with the view of getting it carried for nothing, when the carrier is accustomed to charge for such service, he is guilty of a gross fraud, and in case of loss cannot recover.

3. But if, notwithstanding the passenger's intention to defraud him, the carrier learns the fact, and, knowing it, charges, and the passenger pays, for carrying the article as extra baggage, and for charges usual therefor, then the carrier is liable for the value of the article, in case of its loss.

4. It is for the jury to say, from the whole evidence, whether the carrier received the compensation knowing the baggage to contain gold.

[Distinguished in Humphreys v. Perry, 148 U. S. 627, 13 Sup. Ct. 719.]

Hellman & Cahn, partners, sued Holladay for $10,114, for gold dust of that value, lost

---

1 [Reported by James M. Woolworth, Esq., and here reprinted by permission.]

while being transported on the defendant's stages. The circumstances, as detailed in the petition, were, briefly stated, these: The defendant was the proprietor of a line of stages and of a treasure express, running from Great Salt Lake in Utah via Denver in Colorado, to Omaha in Nebraska. Cahn took passage at Salt Lake for Omaha, and paid the usual fare, being $300; and having a quantity of gold dust, the defendant undertook to carry that for $5 per $1000 extra, which said Cahn then and there paid. Near Fort Bridger this gold dust was lost off the coach, by reason of the unskilful driving of the coach by the defendant's driver, who became intoxicated; and also because the gold dust was placed in the boot of the coach, and not there properly secured. To meet this case, the defendant in his answer alleged, that his "treasure express" was conducted by means of messengers, who accompanied all articles to be thereby carried, and used iron safes, and other precautions for carrying them safely, and the charges on articles so carried were at the rate of $50 per $1000; that all passengers on the coaches were advertised of that fact, and that the defendant would not be responsible for, and forbade the carrying of gold dust by passengers, because the line ran through a country little frequented, and where exposures to robberies and Indian attacks were great; that said Cahn introduced the gold dust into the coach surreptitiously, and paid for it as extra baggage, without informing the defendant's agents, and without their knowing that it was valuable; that Cahn placed his baggage in the boot of the coach, and gave to the driver the liquor by which he was intoxicated. The suit was originally commenced in one of the district courts of the late territory of Nebraska, and on the organization of the federal courts in the state was transferred to this court on account of the citizenship of the parties. At this term, it came on to be tried before the court and a jury. It appeared from the evidence that there were several passengers on board the coach, travelling in company with the said Cahn; that they had with them a large quantity of gold dust, for which, neither as treasure nor extra baggage, did they pay anything at Salt Lake City. They had proceeded in the stage some forty miles to a station known as Millersville, when the general superintendent and the local agent of the stage line came to the coach and told them that telegrams had been received from Salt Lake, that they had extra baggage; that the baggage must be weighed, and they must pay for whatever exceeded 100 pounds to the passenger, at prescribed rates as extra baggage. A good deal of baggage was taken out, weighed, paid for, and replaced.

The plaintiffs introduced evidence tending to prove that at this time Cahn told the general superintendent that he had the gold dust here sued for, and before his eyes placed it